UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ingenix, Inc.,

Plaintiff,

v.

Symmetry Health Data Systems, Inc.,

Defendant.

Civil No. 01-~~906~~ 704 (~~MJD~~ RHK/SRN)

ORDER

---

Peter M. Lancaster, Esq. and Yoav M. Griver, Esq., on behalf of Plaintiff.

Patrick A. Reinken, Esq. and Douglas C. Erickson, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on December 19, 2001, on Defendant's Motion to Amend Answer and Counterclaims (Doc. No. 31).

This Order addresses that Motion.

## I. MOTION TO AMEND ANSWER AND COUNTERCLAIMS

### A. Factual Background.

#### 1. Medicode Confidentiality Agreement.

In August of 1995, Medicode (a former subsidiary of Ingenix, Inc. (Ingenix) that has since been absorbed into it) and Symmetry Health Data Systems, Inc. (Symmetry) entered into a confidentiality agreement. This agreement resulted from Medicode's claim that Symmetry had unlawfully employed Medicode's proprietary information. Under the agreement, Symmetry

FILED FEB 15 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

provided confidential information concerning its Episode Treatment Groups product (ETG ) and methodology, in order to allow Medicode to determine whether Symmetry was using Medicode's proprietary technology or would be infringing on Medicode's pending patent (No. 5, 5557, 514). After examination, Medicode determined that there had been no misappropriation, and there would be no infringement.

The agreement included the following forum selection clause:

> This agreement shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Arizona and the United States of America. It shall be construed according to its fair meaning and neither for nor against either party hereto. Either party shall be entitled to apply to the state and/or federal courts of the State of Arizona located in Maricopa County for all appropriate judicial orders to protect and enforce its rights hereunder, and neither party shall challenge the jurisdiction of any such court or request the posting of a bond by the other party for potential damages of court costs.

(Medicode Confidentiality Agreement ¶ 7.)

**2. O'PIN Agreement.**

On August 7, 1995, Symmetry and O'PIN systems, Inc. (O'PIN) entered into a license agreement involving Symmetry's ETG. O'PIN has since merged into Ingenix. This agreement contained the following forum selection clause:

> All questions concerning the validity, operation, interpretation, and construction of this Agreement will be governed by and determined in accordance with the laws of the State of Arizona. The parties further agree that proper venue for the determination of any dispute arising in connection with this Agreement shall be the United States District Court of the Superior Court of the State of Arizona located in Maricopa County, Arizona.

(O'PIN Agreement ¶ 14.7)

**3. AHI Agreement.**

On September 23, 1998, Symmetry and Applied HealthCare Informatics, Inc. (AHI) (Ingenix's former name) entered into a non-exclusive license agreement. Under the terms of the agreement, AHI licensed software and technology from Symmetry. The agreement contained the identical forum selection clause as the O'PIN agreement. (AHI Agreement ¶ 14.7.)

**B. Procedural Background.**

On July 25, 2000, Symmetry filed suit in United States District Court in the District of Arizona, alleging infringement of U.S. Patent No. 5,835,897 (the '897 Patent). Symmetry named Ingenix and Medicode as defendants. Symmetry also brought claims for breach of a 1995 Medicode Confidentiality Agreement, and of the 1998 AHI agreement, and breach of the Duty of Good Faith and Fair Dealing.

On April 23, 2001, Ingenix brought the present patent infringement suit in this district. Ingenix specifically alleged infringement of its U.S. Patent No. 6,223,164 (the '164 Patent). On June 8, 2001, Symmetry filed an answer which included the affirmative defense that Medicode violated a 1995 confidentiality agreement with Defendant by improperly using Symmetry's information to formulate or rewrite certain patent claims in the '164 patent. (Answer ¶ 19). Symmetry also included counterclaims for patent non-infringement and patent invalidity. (Counterclaim ¶¶ 1-18.)

On May 21, 2001, the Honorable Earl H. Carroll, United States District Judge for the District of Arizona, stayed the Arizona suit in its entirety pending resolution of the prior reexamination and interference proceedings before the U.S. Patent and Trademark Office (PTO). Judge Carroll stated in his Order dated May 18, 2001:

> In the present case, a stay of the entire proceedings appears warranted. First there are numerous advantages to allowing reexamination of the patent by the PTO with its specialized expertise before litigation proceeds any further, most significantly, that the reexamination may eliminate or clarify the issues in this proceeding before additional funds are spent in discovery. Second, based on the parties Motions, Responses and Replies, it is not clear that the contract claims can or should be allowed to proceed while the patent claims are stayed. Not only does it appear that all but one of Plaintiff's causes of action involve the 897 patent,[1] it appears that division of the claims would complicate or cause unnecessary duplication of discovery. Third, in the event that reexamination does not resolve all the disputed issues, the record or reexamination would be available to the trial court, which could facilitate presentation of the issues, defenses and evidence, thereby reducing the complexity and length of the litigation. Finally, costs are likely to be reduced for both the partes and for the Court.

On June 26, 2001, Judge Carroll considered Symmetry's motion to reconsider the stay. Judge Carroll granted the motion to the extent of permitting Symmetry to depose former Ingenix employees Ken Buchanan and Brent Metfessel, but otherwise reaffirmed the stay. On October 24, 2001, Symmetry again sought to modify the stay. In denying Symmetry's motion, Judge Carroll gave the following explanation:

> Plaintiff now seeks to modify the stay. The primary basis for Plaintiff's request appears to be its concern that its participation in discovery in a Minnesota action on issues overlapping with this matter might somehow violate this Court's stay. Reply at 4-5. According to Plaintiff "at a minimum, the stay should be modified to allow the discovery taken in the Minnesota Action to be used here." Motion at 3. This Court sees no need for a modification of the stay on that ground. This Court is not convinced that discovery will substantially overlap in that the Minnesota action and this matter involve different patents. In any event, Plaintiff can participate in discovery relevant to the Minnesota lawsuit without

[1]"Plaintiff's breach of contract claim and the related breach of the covenant of good faith and fair dealing claim specifically ask the Court to issue a permanent injunction against further infringement of the 897 patent. [Dkt. 1]"

> concern that it is violating a stay in this action. Whether discovery from the Minnesota action can or should be used in this case is not a decision for this Court at this time.
>
> Plaintiff also requests that the stay be modified to allow the contract claims to go forward. This Court already considered that issue in issuing the stay. Plaintiff's motion does nothing to persuade this Court that its previous decision should be changed.

Symmetry has since, on November 20, 2001 brought a motion to take certain depositions. Judge Carroll has not yet ruled on that motion, and the stay is still in effect. In addition, the PTO has issued a Notice of Intent to Issue a Re-examination Certificate. However, it has issued no decision to date.

### C. Discussion.

Federal Rule of Civil Procedure 15(a) provides that a court may allow amendments to pleadings "when justice so requires." In interpreting this rule, the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Neither delay nor dilatory motive are sufficient in themselves to deny a party leave to amend a pleading. The delay or dilatory motive must result in prejudice to the party opposing the motion. Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir. 1981). Even if the adverse party would suffer some prejudice if the motion to amend were granted, that prejudice must be balanced against the hardship to the

moving party if the motion were denied. Id.

The Eight Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-51 (8th Cir. 1996). In particular, leave to amend may be properly denied when the proposed amendment would be futile. See Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983). The Eighth Circuit has also held, however, that amendments should be denied on the merits of the claim only if the amendment asserts clearly frivolous claims. Buder, 644 F.2d at 694. The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. Niagra of Wisconsin Paper Corp. v. Paper Industry Union Management Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

Defendant seeks to add the following counterclaims: (III) breach of the 1998 AHI agreement; (IV) breach of the 1995 O'PIN agreement; (V) breach of good faith and fair dealing; and (VI) breach of the 1995 confidentiality agreement. In addition, Defendant seeks to add Medicode as a counter-defendant.

Defendant states that adding these claims is proper under Federal Rule of Civil Procedure 15, and Eighth Circuit precedent. Defendant explains that it is not acting in bad faith in seeking this amendment. Instead, it merely seeks to add legal theories as to an existing party, and to add a new but related party. Defendant further argues that,

> The claims are based on substantially the same facts and conduct surrounding the same transactions that have been alleged as part of this action from the start. Discovery concerning the inventions of the 164 patent will unavoidably cover how these inventions were made and how the patent claims were crafted. If theft of Symmetry's methodology was involved, this is a proper place to

assert such a remedy.

Defendant acknowledges that it has asserted similar claims in the Arizona suit. It explains, however, that the Arizona litigation "has been stayed and the desired amendments are just as easily litigated in this district. In addition, no claim was asserted in that action for breach of the O'PIN license agreement." Defendant also stresses that the counterclaims it seeks to add in the present suit allege that Counter-Defendants used its confidential information to prosecute the '164 patent, while its claims in the Arizona suit allege that they used the confidential information to develop a product. Defendant argues that because its proposed counterclaims concern the '164 patent, the subject of the present suit, they are compulsory counterclaims under Rule 13. Consequently, it is obligated to bring these claims in the present action.

Plaintiff responds that it is inappropriate for Defendant to bring the proposed counterclaims, and the Court should deny its motion. Plaintiff states that the proposed counterclaims would be futile, based on forum selection clauses requiring any such litigation to take place in Arizona. Further, Plaintiff argues that the proposed counterclaims would produce inappropriate parallel litigation. According to Plaintiff, the proposed counterclaims are not within the current scope of the present action, and are not compulsory counterclaims. Moreover, Plaintiff states these claims were already raised in Arizona, and Plaintiff would be prejudiced, and judicial resources would be wasted by litigating the same claims in two courts. Finally, Plaintiff contends that by bringing these counterclaims in the present suit, Defendant is attempting to circumvent the stay imposed in the Arizona suit.

With respect to futility, Plaintiff emphasizes that all three contracts Defendant seeks to place in issue with its proposed counterclaims, contain forum selection clauses that Defendant

itself requested. Each of these clauses provides that the agreement will be governed by the law of the State of Arizona, and that proper venue for the determination of disputes will be the United States District Court, or the Superior Court of the State of Arizona located in Maricopa County, Arizona. Therefore, "each of the proposed breach of contract counterclaims (Counts III, IV, and VI), if allowed, would be immediately subject to dismissal and transfer based upon the forum selection clause governing disputes arising in connection with each of those agreements."

Plaintiff cites Michalski v. Bank of America Arizona, 66 F.3d 993, 997 (8th Cir. 1995) for the proposition that there is no cause of action for breach of the implied covenant of good faith and fair dealing separate from an underlying breach of contract claim. Hence, according to Plaintiff, the proposed counterclaim for breach of the (Count V) would be futile for the same reason as the underlying breach of contract claims. Plaintiff also stresses that the broad language of these forum selection clauses should directly cover the claim for breach of the implied covenant of good faith.

With respect to parallel litigation, Plaintiff states that the proposed counterclaims are not within the current scope of the Minnesota action. Plaintiff contends that the counterclaims reassert claims already at issue in the Arizona litigation. Specifically, Plaintiff states that Defendant's claim that its confidential information was used to prosecute the '164 patent is already being litigated in Arizona. Plaintiff notes that in Defendant's Motion for Reconsideration of Court's Order of May 21, 2001, Imposing a Stay, Defendant sought permission to depose Metfessel and Buchanan. Defendant explained to the Arizona Court that it hoped they would testify that "Symmetry's confidential information was used to create both Ingenix's competing product and to prosecute the new patent." Plaintiff notes that the Arizona

Court even lifted its stay for this limited purpose.

Further, Plaintiff notes that the present case has already been determined to be distinct from the subject matter of Defendant's proposed counterclaims. In his August 13, 2001 Memorandum Opinion addressing Defendant's previous Motion to Dismiss, or Alternatively, to Change Venue, the Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, stated that Defendant had failed to substantiate its argument that the two products and two patents involve exactly the same thing. In addition, Plaintiff notes that Judge Caroll rejected the argument that progress in the present suit would violate the Arizona stay. Hence, Plaintiff explains that the "the Minnesota Action is a narrowly focused patent infringement lawsuit that concerns an entirely different patent and different accused products than currently stayed Arizona Litigation." Plaintiff concludes that granting Defendant's motion would cause expensive and duplicative discovery, and would expand the present suit to encompass much of the stayed Arizona litigation.

Moreover, Plaintiff notes that in his August 13, 2001 Memorandum Opinion, Judge Kyle recognized the stay. In addition, the proceedings before the PTO were requested before the Arizona litigation was even filed. When the Arizona suit was then stayed in its entirety, Plaintiff explains that Judge Carroll recognized that both Defendant's contract claims were inextricably intertwined with its patent claims, and so it was appropriate to stay the entire proceedings. Plaintiff emphasizes that one month before Defendant filed its motion, Judge Carroll, in his October 24, 2001 Order, rejected its request to modify the stay. Plaintiff also notes that on May 1, 2001, Magistrate Judge Lebedoff quashed the subpoenas of four of Plaintiff's former employees, "pending resolution of the motion to stay now submitted in the Arizona federal court

litigation." Consequently, Plaintiff concludes that Defendant's motion should be denied.

The Court denies Defendant's motion. Despite the Eighth Circuit's liberal standard for amending claims, it is still appropriate to deny the adding of a futile claim. See Holloway, 715 F.2d at 392-93. In the present case, the forum selection clauses will render Defendant's proposed breach of contract counterclaims futile. Defendant has never directly addressed this shortcoming. It instead distinguishes its proposed counterclaims from its claims in Arizona by noting that the former concern using its information to prosecute the '164 patent, while the latter concern developing products. Defendant then states that the proposed counterclaims are compulsory because the present litigation concerns the '164 patent. While the Court will address this argument later in this Order, it does not solve the claims' futility problem.

Regardless of whether the information was allegedly used to prosecute a patent or develop an invention, Counts III, IV, and VI of Defendant's proposed counterclaims still concern potential breaches of contract. And each of the agreements in question contains an unequivocal forum selection clause, limiting litigation to Arizona. Further, Defendant itself requested these clauses, and no reason has been provided to discount them.

With respect to Count V for breach of good faith and fair dealing, the Court notes that Michalski may not be applicable in the present situation. The holding in Michalski was that "Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim." 66 F.3d at 997, citing Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 256 (8th Cir.1994). Under the forum selection clauses, however, Arizona law is to govern any disputes concerning the agreements. Therefore, case precedent that is based on Minnesota law should not determine the treatment of

Count V.

Nevertheless, the broad language of the forum selection clauses should encompass Count V for breach of good faith and fair dealing. In the proposed counterclaim, Defendant incorporates the same allegations involved in the breach of contract claims into this claim. It does not state that this Count is in anyway independent from the issues of breach of contract. Therefore, this Count falls within the language of the Medicode Agreement providing that "[e]ither party shall be entitled to apply to the state and/or federal courts of the State of Arizona located in Maricopa County for all appropriate judicial orders to protect and enforce its rights hereunder," and within the language of the O'PIN and AHI Agreements that provides: "The parties further agree that proper venue for the determination of any dispute arising in connection with this Agreement shall be the United States District Court of the Superior Court of the State of Arizona located in Maricopa County, Arizona." As a result, Count V and all of the proposed counterclaims, if pleaded in Minnesota, would be immediately subject to dismissal or transfer based on the forum selection clauses. Hence, they are futile.

The Court also finds that although Defendant's proposed counterclaims concern the '164 patent, they are still not compulsory counterclaims in the present case. With respect to compulsory counterclaims, Rule 13(a) provides that "the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action." Defendant has more than once referenced the prosecution of the '164 patent in arguments to the Arizona Court, most recently when requesting that Judge Carroll lift the stay for the limited purpose of conducting depositions on this issue. Thus, the prosecution of the '164 patent is clearly one of the bases for Defendant's claims in the Arizona suit. Therefore, it is not a

compulsory counterclaim in the present action, which was commenced almost ten months after the Arizona case.

In conclusion, precedent clearly favors avoiding duplicative litigation when possible. See e.g. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); Missouri v. Prudential Health Care Plan, Inc., 259 F.3d 949, 952 (8th Cir. 2001). The Court acknowledges that the prosecution of the '164 patent is related to the subject matter of the present suit, as the present suit concerns the alleged infringement and validity of that patent. However, in the present suit, counterclaims based on that prosecution are not compulsory counterclaims, and would be futile. The forum selection clauses require that such litigation take place in Arizona and be resolved based on Arizona law. Furthermore, the prosecution of the '164 patent is also related to the breach of contract claims pending in the earlier filed Arizona case. The prosecution of the '164 patent has already been the subject of discovery begun there. Moreover, Judge Carroll clearly intended to stay the prosecution of those claims, along with that entire lawsuit, pending the outcome of the PTO proceedings. All of these facts indicate that Arizona is the proper forum for Defendant's proposed counterclaims. Consequently, the Court denies Defendant's motion.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Defendant's Motion to Amend Answer and Counterclaims (Doc. No. 31) is **DENIED**.

Dated: February 14, 2002.

SUSAN RICHARD NELSON
United States Magistrate Judge