**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ingenix, Inc.,

Plaintiff,

v.

Symmetry Health Data Systems, Inc.,

Defendant.

Civil No. 01-704 (RHK/SRN)
**MEMORANDUM OPINION AND ORDER**

---

Steven D. Glazer, Weil, Gotshal & Manges, New York, New York, and Peter M. Lancaster, Dorsey & Whitney, Minneapolis, Minnesota, for Plaintiff.

Daniel D. Maynard and Douglas C. Erickson, Maynard, Murray, Cronin, Erickson & Curran, Phoenix, Arizona, and Patrick A. Reinken, Rider, Bennett, Egan & Arundel, Minneapolis, Minnesota, for Defendant.

---

## Introduction

Plaintiff Ingenix, Inc. ("Ingenix") and Defendant Symmetry Health Data Systems, Inc. ("Symmetry") are health data and information companies that license computer software used in the analysis of health care costs and utilization. Ingenix is the owner by assignment of U.S. Patent No. 6,223,164 ("the '164 patent") while Symmetry is owner by assignment of United States Patent No. 5,835,897 ("the '897 patent"). In dueling lawsuits, both here and in the District of Arizona, each contends that the other has infringed its patent rights.

Ingenix filed this action alleging that Symmetry's Episode Treatment Group (ETG)

FILED NOV 27 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

software–which organizes disparate inpatient, outpatient, and prescription health care claims into discrete "episodes of care"–employs the same subject matter as the '164 patent. Near the close of discovery, Symmetry moved for summary judgment on the issues of: (1) inequitable conduct; (2) willfulness; and (3) non-infringement of claims 2 through 13 of the '164 patent. For the reasons set forth below, the Court will deny those motions

**Standard of Decision**

"[S]ummary judgment is as appropriate in a patent case as in any other." Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 852 F.2d 1557, 1561 (Fed. Cir. 1988) (quotation and citations omitted). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The Court views the evidence and the inferences that may be reasonably drawn from it in the light most favorable to the nonmoving party. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996); see Adkinson v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Enterprise Bank, 92 F.3d at 747; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must demonstrate the existence of specific facts that create a genuine issue for trial; mere allegations or denials are not enough. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957

(8th Cir. 1995).

Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 250. The Court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). In essence, the Court performs the threshold inquiry of determining whether there is need for a trial. See Liberty Lobby, 477 U.S. at 250.

**Analysis**

It is indicative of the bad blood between the attorneys in this matter that all the facts important for these motions implicate the conduct of lawyers. First, Symmetry contends that a series of events both before this Court and the District of Arizona amounts to an "admission" by Ingenix of a failure to cite material prior art before the Patent and Trademark Office (PTO) during the prosecution of the '164 patent and that errors by the counsel of record during and after the prosecution of the '164 patent provide evidence of intent to deceive. Second, Symmetry insists that it is entitled to summary judgment on the matter of willfulness because it sought the opinion of its counsel upon learning the '164

patent had been issued. Finally, Symmetry maintains that the Court should grant summary judgment with respect to any alleged infringement of claims 2 through 13 of the '164 patent[1] because Ingenix failed to specify in the Complaint exactly which claims had been infringed and has produced no evidence of infringement for these claims.

**A. Inequitable Conduct**

In moving for summary judgment, Symmetry asserts that the applicants for the '164 patent and their representatives failed to demonstrate candor, good faith, and honesty before the PTO and that the Court should render the patent unenforceable as a result of that inequitable conduct. In order to meet its initial burden on the defense of inequitable conduct, Symmetry must introduce clear and convincing proof of affirmative omissions of material fact, the submission of false material information, or the failure to disclose material information, coupled with an intent to deceive. See, e.g., Abbott Labs. v. Torpharm, Inc., 2002 WL 1836891 *9 (Fed. Cir., Aug. 13, 2002). Materiality and intent are distinct factual inquiries, Life Technologies, 224 F.3d 1320, 1324 (Fed. Cir. 2000), and each must be proven by clear and convincing evidence, see Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 872 (Fed. Cir. 1988).[2] Although the

---

[1]The patent has fourteen (14) claims, designated 1 through 14.

[2]Should the movant satisfy threshold levels of materiality and intent, the ultimate determination of inequitable conduct is within the discretion of the court, which must make an equitable judgment considering whether the applicant's conduct is so culpable as to render the patent unenforceable. Kingsdown, 863 F.2d at 876. In making this judgment, the court conducts a balancing test between the levels of materiality and intent, in which a greater showing of one factor will allow for a lesser showing of the other. See

premises of inequitable conduct, which require findings based on all the evidence, may preclude summary determination, see KangaROOS U.S.A., Inc. v. Caldor, Inc., 778 F.2d 1571, 1577 (Fed. Cir. 1985), a motion for summary judgment may be granted when, drawing all reasonable factual inference in favor of the nonmovant, the evidence is such that the nonmovant cannot prevail, ATD Corporation v. Lydall, Inc., 159 F.3d 534, 547 (Fed. Cir. 1998).

**1. Materiality**

Symmetry contends that a series of events before both this Court and the District of Arizona amounts to an "admission" by Ingenix of the materiality of uncited prior art. Under PTO rules, information is material to patentability and must be disclosed when:

> it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
> (i) Opposing an argument of unpatentability relied on by the [PTO], or
> (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b). A reference is cumulative if it teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO. Regents of the Univ. of California v. Eli Lilly & Co., 119 F.3d 1559, 1575 (Fed. Cir.

---

Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256 (Fed. Cir. 1997).

1997). Therefore, in order to be material, prior art must be non-cumulative and must either establish a prima facie case of unpatentability or be inconsistent with a position taken by the applicant in arguing for patentability.

Symmetry maintains that Ingenix has admitted a failure to cite material prior art through papers filed in the course of this and other litigation. Throughout the present litigation–and despite a ruling to the contrary–Symmetry has maintained that the '897 patent and the '164 patent involve exactly the same thing. In the Complaint, Ingenix alleges that "Symmetry manufactures and sells products that employs the subject matter of the '164 patent. Such products include Symmetry's ETG." (Complaint at ¶ 11.) In litigation involving the same two parties in the District of Arizona, Ingenix has asserted as an affirmative defense and counterclaim that Symmetry failed to disclose four articles that were material to the patentability of Symmetry's '897 patent.[3] (Erickson Aff. Ex. G at ¶ 42 (District of Arizona Answer and Counterclaim); Erickson Aff. Ex. G. at ¶ 41 (District of Arizona First Amended Answer and Counterclaim).) Because, in Symmetry's view, the '164 and '897 patents are the same, and because Ingenix did not disclose the four articles to the PTO during the prosecution of the '164 patent, Symmetry regards this

---

[3]These were: Mark C. Hornbrook, et al., *Health Care Episodes: Definition Measurement and Use*, MEDICAL CARE, Fall 1985, at 163; Davis S. Salkever, et al., *Episode-Base Efficiency Comparisons and Nurse Practitioners*, MEDICAL CARE, February 1982, at 143; Larry G. Kessler, et al., *Episodes of Psychiatric Utilization*, MEDICAL CARE, December 1980, at 1219; and Ira Moscovice, *A Method of Analyzing Resource Use in Ambulatory Care Settings*, MEDICAL CARE, December 1977, at 1024.

as an admission or failure to disclose material prior art and rests its motion largely upon this inference. (Sym. Supp. Br. Re Inequitable Conduct and Willfulness at 3-4, 7, 12-13.)

For Symmetry to insist that these pleadings represent an admission is, to put it mildly, strained. But to rest this inference on the bare assertion that the '164 and the '897 patents are identical-- despite an earlier contrary ruling by this Court and without any additional evidence-- is astonishing. See Ingenix, Inc. v. Symmetry Health Data Systems, Inc., Civ. 01-704 (RHK/SRN), slip op. at 5 (D. Minn. Aug. 13, 2002) ("The Court cannot conclude that Symmetry's '897 patent infringement case involves 'the same subject matter' as Ingenix's '164 patent infringement lawsuit."); see also Comair Rotron, Inc. v. Nippon Desan Corp., 49 F.3d 1535, 1539 (Fed. Cir. 1995) (noting that "separate patents describe 'separate and distinct [inventions]'"). Symmetry undertakes no comparison to support its contention that the two patents are the same, limiting its analysis to one thin document submitted with its reply brief rebutting Ingenix's assertion that the references would be cumulative.[4] Nor does Symmetry advance any evidence to prove that the uncited references satisfy the second half of the PTO's materiality test; its moving papers never allege that the references establish a prima facie case of unpatentability or are inconsistent with a position taken by the applicant. Instead, the Court is left with the

---

[4]Even a cursory examination of the two patents demonstrates a notable lack of crossover in the references cited. Compare U.S. Patent No. 4,405,829 (issued April 24, 2001) (citing fifty-nine U.S. Patent Documents and seventy-four other publications) with U.S. Patent No. 5,835,897 (issued Nov. 10, 1998) (citing eleven U.S. Patent Documents and eleven other publications).

speculative and altogether unsupported assumption that what is true for '897 must be true for '164. Such flights of fancy, while diverting, do not and cannot satisfy the standard required to prove materiality on summary judgment.

**2. Intent**

Symmetry also asserts that "misrepresentations" by Alan Gorman, the attorney who prosecuted the '164 patent, provide clear and convincing evidence of intent to deceive the PTO.[5] While direct evidence of intent is rarely available in instances of inequitable conduct, intent may be inferred from the surrounding circumstances. See J.P. Stevens & Co. v. Lex Tex, Ltd., 747 F.2d 1553, 1559-60 (Fed. Cir. 1984). For instance, intent may be inferred where a patent applicant knew or should have known that withheld information would be material to the PTO's consideration of the patent application. Critikon, Inc. v. Becton Dickson Vasculaw Access, Inc., 120 F.3d 1253, 1256 (Fed. Cir. 1997).

Symmetry advances three errors or misrepresentations by Mr. Gorman that, they assert, reveal his intent to deceive the PTO. (Def.'s Supp. Br. Re Inequitable Conduct and Willfulness at 7-8, 15.) First, Mr. Gorman provided the wrong date on the "Certificate of

---

[5]It is unclear from Symmetry's initial brief whether these errors or misrepresentations were meant to provide independent grounds for inequitable conduct. Ingenix's brief assumes that they are, but, as Symmetry's reply brief makes clear, Mr. Gorman's behavior is relevant only to the extent that it bears upon intent. See Sym. Rep. Br. Re Inequitable Conduct and Willfulness at 11 n.8 ("None of the events discussed by Ingenix in its Opposition were cited by Symmetry as independent grounds for ruling the '164 patent unenforceable. . . .").

Mailing" submitted to the PTO along with a Revocation and Change of Power of Attorney form. (Erickson Aff. Ex. I at 84:11-86:14 (Dep. of Alan G. Gorman).) Second, while Mr. Gorman indicated that he canceled certain claims "inadvertently" in an interview with the examiner of record, he also described the cancellation as "intentional" during his deposition. (Erickson Aff. Ex. N (Resp. and Interview Summ., dated February 26, 1999); Erickson Aff. Ex. I at 114:3-115:9 (Dep. of Alan G. Gorman).) Finally, in the course of correcting the inventorship of already-issued '164 patent, Mr. Gorman submitted declarations from all the named inventors in support of the proposition that three of the inventors should be removed. (Erickson Aff. Ex. O (Letter Re Request for Correction of Inventorship).) In fact, the declarations had been executed when only *two* of the inventors were to be removed. (Id.) Mr. Gorman asked the PTO to disregard the declarations two weeks later. (Id.)

Symmetry maintains that "these numerous shortcomings" reflect upon "Mr. Gorman's character, candor, integrity and routine in practicing before the PTO" and "coupled with the undisputed failure to disclose the four material references cited above . . . fully support finding of intent to deceive." (Sym. Rep. Br. Re Inequitable Conduct and Willfulness at 12.). Yet none of these events relates in any way to the failure to cite prior art. See Upjohn Company v. Mova Pharmaceutical Corp., 225 F.3d 1306, 1315 (Fed. Cir. 2000) ("[U]nsupported arguments of generalized wrongdoing can not contribute substantial evidence that could support findings of materiality and intent to

deceive."). While Symmetry cites numerous cases where inequitable conduct was found through a pattern of deception, see, e.g., Ulead Systems, Inc. v. Lex Computer & Management Corp., 130 F. Supp. 2d 1137 (C.D. Cal. 2001), in no case is the evidence of intent so entirely unrelated to the challenged conduct. Here, whether the form is properly dated, the claims are canceled, or the inventorship is corrected matters not one whit to the disposition of the prior art. See Seiko Epson Corp. v. Nu-Kote Int'l, Inc., 190 F.3d 1360, 1367 (Fed. Cir. 1999) ("Technical violations of PTO procedures, absent fraud or intentional deception, are not inequitable conduct as would invalidate the patent."). Barring such a nexus, Symmetry must rely on the purportedly high level of materiality "admitted" by Ingenix to carry it over the intent threshold. Such reliance, as noted above, is unwarranted.

**B. Willfulness**

Symmetry has also moved for summary judgment on the issue of willfulness. A potential infringer with actual notice of another's patent has an affirmative duty of care that usually requires the potential infringer to obtain competent legal advice before engaging in any activity that could infringe another's patent rights. Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056 (Fed. Cir. 1994). Whether infringement is willful is a question of fact, to be established by the totality of the circumstances and by clear and convincing evidence. Comark Communics., Inc. v. Harris Corp., 156 F.3d 1182, 1191 (Fed. Cir. 1998). An important factor is whether or not the

infringer obtained the opinion of counsel. See Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992). However, the legal opinion must be competent or it is of little value in showing the good faith belief of the infringer. Comark, 156 F.3d at 1191. In the words of the Federal Circuit, "those cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where the opinion of counsel was either ignored or found to be incompetent." Read Corp. v. Portec, Inc., 970 F.2d 816, 829 (Fed. Cir. 1992).

Symmetry has introduced evidence sufficient to prove that it sought the advice of counsel. (See Erickson Aff. Ex. C at ¶ 8 (Decl. of Michael A. Portnoy); Ex. E at ¶ 7 (Decl. of Dennis K. Dang).) Shortly after learning about the '164 patent, Symmetry consulted by phone with David G. Rosenbaum, a Chicago-area patent attorney who was familiar with ETGs. (See Erickson Aff. Ex. C at ¶ 8; Ex. E at ¶ 7).) Within days of that initial conversation, Mr. Rosenbaum informed Michael A. Portnoy, Symmetry's Vice-President, that he believed that Symmetry's ETG did not infringe upon the '164 patent. (Erickson Aff. Ex. C at ¶ 9; Ex. E at ¶ 8.) Mr. Rosenbaum repeated his impressions several times following that conversation (Erickson Aff. Ex. C at ¶ 8) and, in February of 2002, confirmed his opinion in a letter. (Id.) That letter was supplemented in April of 2002. (Id.)

The remaining questions concern the nature and quality of the advice Symmetry received from Mr. Rosenbaum. In order for an infringer to reasonably rely on an opinion,

that opinion must be objective and authoritative, not just conclusory. Minnesota Min. and Mfg. Co. v. Johnson & Johnson, 976 F.2d 1559, 1580 (Fed. Cir. 1992). The steps normally considered necessary to prepare a competent opinion include a thorough review of the cited prior art and prosecution history. Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996). Opinion letters should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face. Westvaco Corp. v. International Paper Co., 991 F.2d 735, 743-44 (Fed. Cir. 1993). Oral opinions, in particular, are disfavored because they often have to be proved years after the fact, based only on testimony that may be affected by faded memories and the forces of contemporary litigation. Minnesota Min. and Mfg. Co., 976 F.2d at1580.

Here, the facts do not preclude a jury from finding that the opinion was incompetent. Recalling his original conversation with Mr. Rosenbaum, Michael Portnoy, Symmetry's Vice-President, testified:

> A. He said that basically you--your product does not function the way this patent describes.
>
> Q. Now, was that, was that his--what other reasons, if any, did Mr. Rosenbaum give you at that time?
>
> MR. MAYNARD: Objection to the form.
>
> THE WITNESS: I don't think any.

(Griver Aff. Ex. O at 335:5-25 (Dep. of Michael A. Portnoy).); see also Minnesota Mining and Mfg. Co., 976 F.2d at 1580 (stating that a competent opinion must not be conclusory). Such an opinion, especially an oral opinion, displays none of the consideration or authority required to induce reasonable reliance. As the Federal Circuit has noted, "[i]f infringers could rely on any opinion to defeat willful infringement, no matter how incompetent, insulation from increased damages would be complete." Jurgen, 80 F.3d at 1572-73.

Even the testimony of the attorney who provided the opinion that Symmetry supposedly relied upon raises questions about the competency of that opinion. As Mr. Rosenbaum testified:

> A. . . . I did not feel that the--state of my opinion at this point was such that it was sufficient to issue a competent written opinion.
>
> Q. Right. Well, for one thing, you hadn't even gotten a prosecution history yet, so you couldn't opine on the doctrine of equivalents.
>
> A. Correct, right.
>
> Q. And you say competent written opinion, so I assume that the same would be true; you couldn't give them even a competent oral opinion that there was no infringement?
>
> A. Correct.

(Griver Dec. Ex. P at 78:23-79:9 (Dep. of David G. Rosenbaum).) While Mr. Rosenbaum repeated his impressions regarding the patent several times following that conversation (Erickson Aff. Ex. C at ¶ 8), he did not receive materials-- such as the file wrapper-- he

believed necessary to perform a competent professional review until about six months after that conversation. (Griver Dec. Ex. P at 100:1-17.) While Mr. Rosenbaum did confirm his oral opinions in a letter sent in February of 2002, nearly ten months after Symmetry learned of the '164 patent, Symmetry has not provided that letter to the Court. See Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1572-73 (Fed. Cir. 1988) ("Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion was obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention."). Rather than demonstrating competence, the evidence before the court would appear to support an opposite condition, and thus, falls well short of the standard required to establish Symmetry's lack of willfulness.

### C. Claims 2 through 13

Finally, after serving Ingenix with a set of interrogatories and requests for admission, but before the deadline for their return, Symmetry moved for summary judgment on its counterclaim, filed under the Declaratory Judgment Act, for non-infringement with regard to claims 2 through 13 of the '164 patent. In the Complaint, Ingenix alleged that "Symmetry has infringed the '164 patent and is continuing to infringe the '164 patent."[6] (Complaint at ¶ 14.) Symmetry asserts that, since filing the Complaint,

---

[6]Generally, with regard to patents, no special level of particularity is required above and beyond the notice pleading requirements of Rule 8. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 12351 (2d ed. 1990). While early,

Ingenix has only disclosed expert witnesses and opinions regarding claims 1 and 14 of the '164 patent. (Sym. Supp. Br. Re Claims 2-13 at 3.) In response, Ingenix contends that it never specifically accused Symmetry of infringing claims 2 through 13 and included the following "verified, unequivocal promise" in its timely response to the requests for admission:

> (i) Ingenix does admit and stipulate unequivocally that it will not sue Symmetry for infringement of Claims 2 through 13 by any past or current Episode Treatment Groups™ (ETGs) of Episode Risk Groups (ERGs) products manufactured and sold by Symmetry.
>
> (ii) Ingenix also hereby expressly abandons any such charge of infringement or request for relief as to claims 2 through 13 that may be deemed to be included in its Complaint filed on April 24, 2001.

(Griver Dec. Re Claims 2-13 Ex. A (Resp. to Req. for Admission).) Despite Ingenix's admission, Symmetry contends that it nonetheless fears a lawsuit based on these claims and has persisted with its motion.

The Declaratory Judgment Act authorizes a court to declare the rights of an interested party in a case of an actual controversy:

---

non-binding cases can be found indicating that plaintiffs should specifically allege which claims of the patent have been infringed, see e.g., J.D. Ferry Co., Inc. v. Macbeth Eng. Corp., 11 F.R.D. 75, 89 (M.D. Pa. 1951), these almost all occur within the context of a Rule 12(e) motion for a more definite statement. See Fed. R. Civ. P. 12(e) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."). At no point did Symmetry file such a motion.

> (a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. For declaratory justiciability there must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit; and (2) present activity that could constitute infringement or concrete steps taken with the intent to conduct such activity. Phillips Plastics v. Kato Hatsuujou K.K., 57 F.3d 1051 (Fed. Cir. 1995). The purpose of the two part test is to see whether the need for judicial attention is real and immediate, see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937), or is prospective and uncertain of occurrence, see BP Chemicals, Ltd. v. Union Carbide Corp., 4 F.3d 975 (Fed. Cir. 1993).

Here, the Ingenix's unequivocal promise not to sue should relieve Symmetry of a reasonable apprehension that it will face an infringement suit. See Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (1995) (holding that defendant's post-filing covenant based on current product line was sufficient to end jurisdiction); Grain Processing Corp. v. American Maize Corp., 840 F.2d 902, 906 (Fed. Cir. 1988) (holding that no case or controversy existed where patentee "abandoned its charge that [the defendant] had infringed [ten claims] prior to trial, and since then has steadfastly refused to assert infringement of those claims") (internal quotation omitted). Moreover,

Symmetry has neither suggested nor presented evidence that indicates any present activity that could constitute infringement with regard to claims 2 through 13. See Phillips Plastics, 57 F.3d at 1052. While Symmetry may have maintained a reasonable apprehension as to these claims at one point, a justiciable controversy must exist at every stage of the proceedings for the Court to maintain jurisdiction. See Super Sack, 57 F.3d at 1058. Where, as here, claims are abandoned, the Court is stripped of jurisdiction. See Grain Processing, 840 F.2d at 906. Accordingly, since "to proceed would . . . [involve] the court in rendering a forbidden advisory opinion," Super Sack, 57 F.3d at 1060, summary judgment is inappropriate regarding these claims.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED THAT** Defendant Symmetry Heath Data Systems, Inc.'s Motion for Summary Judgment Re Inequitable Conduct and Willfulness (Doc. 83) and Motion for Summary Judgment Re Non-Infringement of Claims 2 through 13 (Doc. 100) are **DENIED.**

Dated: 11/27/02

RICHARD H. KYLE
United States District Judge